Clayton v. Clayton.

LIZZIE CLAYTON

*v.*

ALONZO CLAYTON.

[Submitted December 13th, 1899.   Decided December 16th, 1899.
Filed March 24th, 1900.]

1. Where a husband, pending suit for divorce against his wife on the ground of adultery, seeks the society of his wife, and asks and obtains his marital rights, the decree will be set aside on a bill of review filed by the wife as quickly as reasonable diligence under the circumstances requires, though the husband has in the meantime contracted another marriage.

2. Complainant, defendant's divorced wife, was an illiterate person, very poor, and had two children to support. It appeared that she employed three different attorneys at different times after her husband had obtained a divorce from her for adultery, to obtain some redress because the husband, while the bill was pending, had exercised marital rights.—*Held,* that, under these circumstances, she exercised reasonable diligence in filing her bill of review in less than a year after the decree was signed, though the husband had in the meantime contracted another marriage.

On bill of review.

The defendant herein, Alonzo·Clayton, filed his petition for divorce against his wife, Lizzie Clayton, the complainant herein, on April 9th, 1897, charging her with adultery. She answered, denying the adultery, and the cause was brought to trial before

a vice-chancellor on the 6th of July, 1897. After hearing counsel, the vice-chancellor took time to consider, and subsequently, on the 28th of August, wrote a letter to the respective counsel of the parties stating that he would advise a decree for the petitioner. Such decree was presented to him on the 22d of December, 1897, and was advised by him, and was filed on January 10th, 1898, but the exact date of the signature of the chancellor may be in doubt, because it appears from an inspection of the files that copies were sent to the solicitors on January 28th, 1898, which was, presumably, shortly after such signature.

In December, 1898, the defendant, the wife (complainant herein), filed a petition, which was presented by a different solicitor, for a rehearing, and upon that petition; after notice to and answer by the defendant herein, leave was granted to her to file a bill of review, which was done on the 22d of June, 1899. The defendant, Alonzo Clayton, answered, and the cause was brought to hearing on the 15th of September, 1899, and the evidence closed on December 13th, 1899.

The bill of review sets forth that on Sunday night, August 1st, 1897, less than four weeks after the trial, and nearly that length of time before the announcement of the decision, the husband came to the house of the wife where she was living by herself with her children, and sought to have, and did have, sexual intercourse with her; that visit to the wife by the husband was repeated every night during that week, on which occasions he sought to have sexual intercourse with her, and did have sexual intercourse with her; that in the latter part of January, 1898, on the occasion of the death of a child, he again came to her house, and spent two nights in succession with her, and had sexual intercourse with her; and that at that time she did not have information that the decree for divorce had been made against her.

These facts are denied by the answer, and the cause was brought to hearing thereon.

*Mr. David Harvey, Jr.*, for the complainant.

*Mr. Charles E. Cook*, for the defendant.

PITNEY, V. C.

It was not contended that a bill of review was not the proper remedy of the wife in this case, and I am satisfied that it is the proper remedy. *Story Eq. Pl.* §§ *404, 412.*

The proofs show the following state of affairs : For some time prior to the trial of the original cause in July, 1897, the husband had been allowing his wife a weekly sum of $6 in the way of trade at a provision store. She rented a tenement, and supported herself and three children by manual labor—washing, &c.—and in the summer time rented out some of her apartments to cheap lodgers. These were persons who came to Asbury Park for the summer, some of them to work at various employments there and others for vacation. Shortly before the 1st of August, 1897, the husband withdrew the credit given to his wife at the provision store, and stopped his weekly support. On the night of the 1st of August he came to the house late in the evening, solicited and obtained from his wife marital rights for that night. He came the next night and again solicited marital rights, and she refused him unless he would renew his weekly allowance. This demand and refusal were kept up for almost every night during the week. The husband denies in the most positive manner any such solicitation or interview. But the facts are sustained, not only by the evidence of his wife, but by that of four credible persons, and I am constrained to believe that he has deliberately falsified in that respect.

On the 7th of August, 1897, his wife made complaint to a justice of the peace against her husband for non-support, and on the 12th the justice issued a warrant for Clayton, who was brought before him on the 13th or 14th, confessed his delinquency and entered into security for the payment to his wife of a weekly sum of money. How long that payment continued does not appear.

On one of the last days of January, 1898, one of the children of the parties died, and notice was sent to the husband, who came to the house and stayed there most of the time till after the funeral, and the proof satisfies me that he slept two nights with his wife and had sexual intercourse with her. This he

also denies, though he admits that he did sleep in the house on that occasion.

It remains to determine what effect these facts now have upon the decree already entered.

My recollection of the original case against the wife is that, after hearing counsel, my mind was in doubt as to what disposition should be made of the cause; I held it over, had the evidence written out and came to the conclusion, not without some hesitation, that the case of the petitioner was made out. In fact, while I felt constrained to advise the decree, I also felt that I should have been much better satisfied if the case had been clearer on the evidence than it was.

I am now well satisfied that if the case had been opened before decree signed, and evidence of what occurred in August, 1897, had been produced before me, the effect upon my mind of the conduct of the husband would have been such that I should have had doubts whether he himself believed in his wife's guilt, and if he himself, knowing the witnesses and knowing the circumstances, doubted it, or did not thoroughly believe it, the result would have been that I should have advised a dismissal of the petition, quite independent of the question of condonation.

Of course the deliberate act of the husband in seeking the society of the wife and asking for and exercising his marital rights, after a full disclosure to him in court of the evidence of her previous infidelity, showed that he did not feel that he had been injured. It was a complete condonation of her guilt. She swears—but in that she is mistaken—that she did not know that any decree had been entered against her until after her child's funeral. I am satisfied that she did hear of the decision of the cause shortly after it was announced to her counsel, and that she was informed by her then solicitor that the decree had been signed shortly before her child died.

In her bill of review she states that some time after the proceedings before the justice she called upon her counsel in the original cause, who is not her counsel in this cause, and stated the circumstance of her husband going back to her and enjoying

her person, and was informed by him that it was too late to do anything inasmuch as the case had been decided against her. Direct proof of this particular allegation of the bill of review was not offered on the trial, but I think that it may be inferred from other facts clearly proven that she did make such communication to her counsel. In fact, the developments at the trial show that the complainant, for some reason (probably she was mentally unable), did not put her present counsel in full possession of all the facts, and they came out by piecemeal at the hearing. Certain letters from her original counsel to her were put in evidence, which show that she did consult that counsel from time to time before the decree was signed, and instructed him to take an appeal from the decree when it should be signed, and that she paid him a small sum of money on account of the expense of such appeal; that in November, 1897, he wrote her that as soon as the decree was signed and filed he would proceed with the appeal. In January, 1898, he wrote her that the decree had been filed, and that the appeal could now be taken, and asked her to send him more money for that purpose. On February 3d, 1898, just after the funeral of her child, she discharged her then counsel, and he returned to her a portion of the money she had paid him, and stated that he had withdrawn the appeal. Now I am well satisfied that while she was not asked the question on the trial in support of the allegation that she made known her marital connection with her husband to her then counsel, it is, as I have said, fairly inferable that she did do so. Shortly after February 3d—how soon does not appear, but I am satisfied that it was during that month—she went with the few dollars—only $6—which were returned to her by her previous counsel, to another counsel, Mr. S., paid him the $6, and laid all the facts before him, to wit, the marital intercourse that her husband had with her, and employed him to proceed against her husband. He undertook the employment, and promised to take legal measures in her behalf. But he did not do so. He frankly and properly admitted on the stand that he was at a loss what to do. She was poor, had very little money, and he thought it was not worth while to go

far away from home or expend much time or labor upon the matter, and hoped to have an interview with the vice-chancellor who heard the cause, and get from him some suggestions as to what course should be pursued. The complainant called upon him very frequently, urging him to proceed with the matter, but he failed to do anything. In the meantime, in the month of July, 1898, she consulted still another counsel, a Mr. G., about the matter, but just what advice she received from him does not appear. In the fall of 1898, just the date he cannot fix, she finally discharged Mr. S., and he returned to her the money that she had paid him. She then, shortly after that, employed her present solicitor, and he instituted proceedings, first by a petition for a rehearing of the cause, and then, upon the suggestion and leave of the court, filed the bill of review.

In the meantime the husband had married a second time, and the defence now made is that the rights of another person having intervened, the wife has been guilty of such laches as that the court should not afford her relief.

In considering this defence the situation and character of the complainant must be taken into consideration. She is an extremely illiterate and generally ignorant person, of high temper, and having an ill-regulated mind; very poor, with herself and two children to support by her manual labor, without any aid; and hence she is not to be held to the same degree of diligence and care of her rights that a more intelligent sensible person, with command of sufficient pecuniary means, would be held. I think the case shows as much diligence on her part as can be reasonably expected from a person of her character and in her situation.

My inference from the whole of the facts is that the complainant did not herself know what effect the conduct of her husband had upon her rights as against him, and I doubt very much if some of the counsel that she consulted fully appreciated its effect or were able to devise a remedy for her in the premises. It is evident that she felt wronged and aggrieved by her husband, and felt that in some way the divorce was invalidated, and looked about in every direction for some redress against him,

and was glad to adopt any measures to compel him to do her justice, but never succeeded in getting proper attention and advice until she met her present solicitor. I feel constrained to acquit her of laches in the sense in which that word is used in connection with intelligent capable persons who are able to take care of themselves.

But the fact still remains that no legal measures were taken on her behalf until the month of December, 1898, nearly a year after the decree of divorce was signed, and in the meantime her husband had married again, and the question is whether her right under a bill of review, if filed as quickly as reasonable diligence under the circumstances requires, is affected by the fact that there has been an intermediate marriage.

Now the statute gives all persons three years within which to appeal from any decree of this court, and I understand the law to be that a decree of divorce is not an exception. It is, of course, not open to dispute that a decree in a divorce case is appealable, no matter whether for or against the divorce, and the language of the one hundred and fourteenth section of the Chancery act is general, that *all* final decrees are subject to appeal for a period of three years. The result of that statute is that in a contested divorce case any person intermarrying with the party procuring the divorce enters into that relation subject to the risk of an appeal being taken at any time within three years, and the decree being reversed. What the effect of such reversal under such circumstances would be upon the *status* of the second wife, and any children born from the marital intercourse, if the intermarrying took place a reasonable time after the signature of the decree and before appeal taken, it is not necessary to determine. Certainly, in such case, at the time of the marriage, the divorced spouse had a right to contract the marriage relation, and in case no appeal is taken, or in case of an appeal if the decree be affirmed, the marriage must be held to take effect from the day it is entered into. And yet, as I have observed, it seems perfectly well settled, and it has always been the sentiment of the bar of this state, that the rights of the incoming spouse to the continuance of the marriage relation, with all its incidents, is

dependent upon the chances of an appeal being taken and the decree of divorce being reversed.

Now the lady who has intervened and married the defendant, Clayton, in this case entered into those relations subject to that risk for three years; and, if so, I cannot see that it is any hardship upon her to subject her to the risk of a bill to review the decree that was made within a less time than three years. She is, in law, presumed to be aware of, first, the danger of an appeal, and second, the danger of a bill of review.

I will therefore advise a decree that the decree of divorce in this case be set aside and annulled.

The defendant must pay the complainant's costs, including a counsel fee of $50.